**Jose M. TOURON, Jr., Petitioner,**

v.

**NATIONAL IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 03–3250.

United States Court of Appeals, Federal Circuit.

June 9, 2004.

Jose M. Touron, Jr., of Counsel, Miami, FL, for Petitioner.

Lauren S. Moore, Principal Attorney, David M. Cohen, James M. Kinsella, of Counsel, Washington, DC, for Respondent.

Before MICHEL, SCHALL, and DYK, Circuit Judges.

PER CURIAM.

Petitioner Jose M. Touron, Jr. ("Touron") petitions for judicial review of an arbitrator's decision denying Touron's grievance of his removal by the National Immigration and Naturalization Service ("INS")[1] from his position as an Immigration Inspector. *In re Nat'l Immigration & Naturalization Serv. Council, Am. Fed'n of Gov't Employees, Local 1458 and United States Immigration & Naturalization Serv.* (June 12, 2003) (Kaplan, Arb.) (*"Opinion"*). We *affirm.*

## BACKGROUND

Touron was an Immigration Inspector assigned by the INS to Miami Internation-

---

1. Effective March 1, 2003, the INS was abolished pursuant to 6 U.S.C. § 291(a), and its components were transferred into the Department of Homeland Security.

al Airport in Florida. On March 6, 2001, Touron's immediate supervisor, Acting Supervisory Immigration Inspector Sharon Anca ("Anca"), directed Touron to perform a "departure escort," escorting a foreign national who had been denied entry to the United States to an aircraft that was due to depart the country to the foreign national's country of origin. Touron refused, stating that he was ill, although he declined to request sick leave when Anca asked him if he wished to do so. When Anca repeated the order, Touron again refused, stating that he was not a Detention Officer and that his position did not require him to perform departure escorts. Anca advised Touron's second-line supervisor, Assistant Port Director Rafael Henry ("Henry"), that Touron had refused to perform the escort. After Anca repeated the order with Henry present, Henry advised Touron that he had been given a lawful order and that failure to comply with the order could result in disciplinary action. Touron again refused to perform the escort, even after Henry repeated his warning. At the discussion at which Henry was present, Touron did not rely on illness as a ground for refusing to comply, claiming only that such a departure escort was not within his duties.

On April 24, 2001, the INS proposed removing Touron from his position, alleging that he had been insubordinate. Acting District Director John M. Bulger ("Bulger") upheld the proposed removal on January 25, 2002. Bulger noted that Touron had heart problems and a pacemaker, but Bulger rejected Touron's claims that he was unable to perform the departure escort because of these health problems. In addition, Bulger rejected Touron's argument that he was not required to perform the escort because he was not a Detention Officer, stating that "Immigration Inspectors routinely perform departure escorts" and that the escort as-

signed to Touron "was part of the normal course of business" at the airport. (Resp't App. at 80.) In determining Touron's penalty, Bulger noted that Touron had previously been suspended twice, including once for insubordination, and ordered that Touron be removed on February 8, 2002.

Touron contested his removal and requested arbitration. In the arbitration, he was represented by Local 1458 of the American Federation of Government Employees ("the Union"). The arbitrator concluded that, under the circumstances, Touron's removal was appropriate. *Opinion*, slip op. at 14. First, the arbitrator concluded that Touron's refusal to perform the escort was an act of insubordination. *Id.* at 11. Second, the arbitrator concluded that Touron did not have an illness that prevented him from performing the escort. The arbitrator stated that the INS had reasonably accommodated Touron's heart disorder, and he concluded that Touron's assertion at the arbitration hearing that, on the day in question, he had a gastrointestinal problem lacked credibility because Touron had failed to make such an assertion at any other time during the two years before the hearing. *Id.* at 11–12. Third, the arbitrator held that performing a departure escort was within the scope of Touron's duties, and he rejected as "pretextual" Touron's argument that performing departure escorts was not within the scope of his duties. *Id.* at 13. Finally, the arbitrator rejected several procedural arguments raised by the Union with respect to the arbitration proceedings. *Id.* at 14–16.

Touron petitioned for review of the arbitrator's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9). *See* 5 U.S.C. §§ 7121(f), 7703 (2000).

## DISCUSSION

We review a decision by an arbitrator in a grievance affecting a federal employee

under the same standard of review that is applied to decisions of the Merit Systems Protection Board. 5 U.S.C. § 7121(f); *Ollett v. Dep't of the Air Force*, 253 F.3d 692, 693 (Fed.Cir.2001). Accordingly, we must affirm the arbitrator's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Giove v. Dep't of Transp.*, 230 F.3d 1333, 1338 (Fed.Cir. 2000) (quoting 5 U.S.C. § 7703(c)).

■ The petitioner first argues that the arbitrator failed to consider Article 17 of the Collective Bargaining Agreement between the Union and INS, which requires the agency to provide working conditions that are both safe and healthy. The petitioner argues that requiring an employee who is ill to perform a departure escort violates Article 17. Although the arbitrator did not specifically discuss Article 17, he did "conclude that [the petitioner] was not impeded from performing the departure escort on March 6th due to illness." *Opinion*, slip op. at 12. This conclusion, which is based in part on a credibility determination with respect to the petitioner's alleged gastrointestinal disorder, is supported by substantial evidence. With respect to the petitioner's heart condition, the record shows that the petitioner's refusal to perform the departure escort was based on his condition on the day in question, not his condition in general. The petitioner acknowledged that the INS had accommodated his heart condition, *id.* at 3, and there is no showing that the petitioner's heart condition prevented him from performing departure escort duties. Indeed, the petitioner had performed escort duties "many times" in the past, *id.* at 4, even after he received his pacemaker. Furthermore, the petitioner expressed his alleged health concerns only to Anca, not to Henry. *Id.* at 5. Accordingly, we reject the petitioner's argument that the arbitrator erred in his finding that the INS violated Article 17 by requiring him to perform an activity that he was too ill to perform safely.

■ The petitioner also asserts various procedural claims, such as his claims that the INS unjustly delayed the arbitration; that he was denied due process because the INS failed to produce documents he and the Union had requested; and that he was prejudiced because Anca did not testify against him at the hearing. The arbitrator determined that "[t]here is no evidence in the record to support any of these claims." *Id.* at 16. We find no error in the arbitrator's determinations. Thus, the arbitrator found no evidence to support the petitioner's claim of intentional delay by the INS, and the petitioner does not direct us to any such evidence in the record. In addition, the arbitrator did not abuse his discretion in refusing to require the INS to produce the documents that the petitioner requested. Finally, the arbitrator noted that "Anca is no longer employed by the INS." *Id.* at 3 n. 1. The INS was not obligated to call Anca as a witness, and the petitioner provides no evidence to contradict the arbitrator's conclusion that "[t]he record does not indicate that the [INS] sought to interfere with her testifying in any way." *Id.* at 15.

■ The petitioner also alleges that he was denied the right to Union representation at the meeting with Anca and Henry at which he stated that he would not perform the departure escort. However, Article 30B of the Collective Bargaining Agreement, on which the petitioner relies, only entitles the petitioner to Union representation "at any examination of an employee in the unit by a representative of the [INS] *in connection with an investiga-*

*tion."* (Informal Br. of Pet'r at 16 (emphasis added).) Because no investigation had been initiated at the time the petitioner refused to comply with his supervisors' orders, the petitioner had no right to a Union representative at that meeting.

■ Finally, the petitioner alleges that the penalty of removal imposed by the INS "is grossly disproportionate to the offense." (Informal Br. of Pet'r at 27.) Both the arbitrator and Bulger properly considered the petitioner's previous misconduct, including insubordination, and the other circumstances of the case and determined that the penalty of removal "is appropriate under the circumstances." *Opinion,* slip op. at 14. "The choice of penalty is committed to the sound discretion of the employing agency and will not be overturned unless the agency's choice of penalty is wholly unwarranted in light of all the relevant factors." *Guise v. Dep't of Justice,* 330 F.3d 1376, 1382 (Fed.Cir. 2003). As the arbitrator correctly concluded, Bulger did not abuse his discretion in ordering that the petitioner be removed from his position.

We have considered the petitioner's remaining arguments, and we find them to be without merit.

## CONCLUSION

For the foregoing reasons, the arbitrator's decision is affirmed.

## COSTS

No costs.